Filed 3/18/25  P. v. Murray CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DUSTIN MURRAY,<br><br>    Defendant and Appellant. | F087699<br><br>(Super. Ct. No. LF013543A)<br><br><br>**OPINION** |

<u>THE COURT</u>[*]

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Francine R. Tone, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

Defendant and appellant Dustin Murray was found guilty by a jury of attempted burglary, petty theft, and witness dissuasion. The trial court sentenced defendant to 13 years in prison.

Defendant's appointed counsel filed an opening brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, identifying no error and asking this court to conduct an independent review of the record on appeal. Defendant was invited to submit a letter stating any grounds for appeal, but he failed to do so within the time allotted. We conducted an independent review of the entire record and find no error. We affirm.

## PROCEDURAL SUMMARY[1]

On June 9, 2022, the Kern County District Attorney filed an amended information charging defendant with: attempted burglary (Pen. Code,[2] §§ 664, 460, subd. (a); count 1); dissuading a witness from giving testimony (§ 136.1, subd. (a)(1); count 2); petty theft (§ 488; count 3); dissuading a witness from making a report (§ 136.1, subd. (b)(1); count 4); and dissuading a witness from causing arrest (§ 136.1, subd. (b)(3); count 5). The information also alleged defendant had suffered a prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) which also qualified as a serious felony conviction (§ 667, subd. (a)).

On June 10, 2022, the jury found defendant guilty on counts 1, 3, 4 and 5, but not guilty on count 2. In a bifurcated trial, the jury found true the prior felony conviction allegation.

On July 12, 2022, the trial court denied defendant's motion to dismiss his prior strike conviction (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497) and his

---

[1] Parts of the procedural and factual summaries are incorporated from our nonpublished opinion in defendant's prior direct appeal in this case, *People v. Murray* (Oct. 27, 2023, F084628) (*Murray*), contained in the clerk's transcript.

[2] Undesignated statutory references are to the Penal Code.

motion to strike the five-year enhancement.  The court sentenced defendant to 13 years as follows:  on count 1, four years (the middle term of two years, doubled due to the prior strike conviction), plus a five-year serious felony conviction enhancement; on count 4, four years (the middle term of two years, doubled due to the prior strike conviction) consecutive to count 1; the middle term of four years on count 5, stayed per section 654; and 180 days in county jail on count 3 to be served concurrently.

On October 27, 2023, this court concluded in *Murray* that the trial court committed prejudicial instructional error and reversed defendant's conviction on count 5 for dissuading a witness from causing arrest under section 136.1, subdivision (b)(3).  Because there was sufficient evidence to support the offense, the matter was remanded to permit the prosecution to retry defendant on count 5.  The judgment was otherwise affirmed.  (*Murray*, *supra*, F084628.)

On March 1, 2024, the trial court held a hearing after the remittitur on appeal.  The court dismissed count 5 on the prosecution's motion.  The probation department had confirmed to the court there were no additions to the previous probation report.  The court proceeded with a full resentencing.  Defendant renewed his *Romero* motion.  The prosecution opposed the *Romero* motion and argued for imposition of the same sentence because the sentence on the dismissed count 5 had been stayed originally.  The court denied the *Romero* motion and sentenced defendant to 13 years consisting of the same terms previously imposed on each count but with no sentence on the now dismissed count  5.  An amended abstract of judgment issued on April 17, 2024.

On August 2, 2024, appointed appellate counsel sent a letter pursuant to *People v. Fares* (1993) 16 Cal.App.4th 954 to the trial court regarding an error in the fines imposed in the abstract of judgment issued on April 17, 2024.  An amended abstract of judgment issued on November 5, 2024.

Defendant filed a timely notice of appeal.

**FACTUAL SUMMARY**

We incorporate the factual summary from *Murray*. "At about 8:00 a.m. on September 11, 2021, Edgar M. was asleep in his home with his wife and their four children when his dogs started barking. Edgar's wife woke Edgar up. Edgar and his wife looked out the bedroom window and saw somebody jumping over their backyard fence. Edgar started to put clothes on and walked towards the kitchen door. He saw defendant trying to push open the sliding glass door but a stick in the track of the door prevented the door from opening. Edgar had seen defendant before around town and had given him food. Edgar saw defendant attempt to pull the door open about 10 times. Defendant's attempts to open the door damaged the door's locking mechanism. After he was unable to open the door, defendant grabbed an electronic speaker in the backyard and started walking towards the side of the house.

"Edgar went out the front door and confronted defendant outside his house. Defendant still had the speaker from the backyard. Edgar told defendant 'that's my speaker' and asked defendant 'what the f[**]k" he was doing.' Defendant left the speaker and walked away. Edgar waited until defendant exited through the house front gates and then called 911. Edgar got into his vehicle and followed defendant down the street, staying 'a safe distance' away in his car.

"Kern County Sheriff's Deputies Jaime Alarcon and Steven Davis were dispatched in response to Edgar's 911 call. Edgar and a bystander waved to Alarcon to get his attention when he arrived where defendant was walking down the street. Alarcon pulled up in his patrol vehicle shortly before Davis. Edgar identified defendant to Alarcon by saying 'something to [the] effect' of 'that's him.' Alarcon asked defendant, '[H]ey, can I talk to you?' Defendant turned towards Alarcon in a manner Alarcon considered aggressive and loudly said 'something like … "what do you want." ' Alarcon told defendant, 'Please hands behind your head, turn around.' Defendant complied. Alarcon handcuffed defendant and put him in the back seat of his patrol vehicle. The patrol

4.

vehicle's doors lock from the outside every time they are closed. Alarcon said to defendant 'something to [the] effect' that he was 'still doing [his] investigation and this is just investigative detention.'

"Alarcon went to speak with Edgar about 15 feet away from where his vehicle was parked. Edgar confirmed to Alarcon that defendant was the person who tried to break into his house. Alarcon believed defendant could hear him and Edgar talking at certain points. While Alarcon and Edgar were talking, defendant was yelling at Edgar from the partially lowered window of Alarcon's vehicle. Defendant was cussing and yelled at Edgar, ' "I know where you live. I'm going to kill you." ' Edgar testified to defendant making these statements, but Alarcon did not hear defendant say, 'I'm going to kill you.' Alarcon heard defendant say to Edgar several times, ' "You're a b[**]ch and I'm going to get you for this." ' Alarcon had not yet told defendant he was under arrest before defendant said this to Edgar. Alarcon heard defendant call Edgar a 'b[**]ch' 'maybe two minutes after' he put defendant in his patrol vehicle. Edgar took this 'possibly' as a threat for getting defendant arrested. Edgar told Alarcon he believed defendant made these statements to dissuade him from making a report and to possibly later testifying. Defendant was banging on the patrol vehicle from inside while Alarcon and Edgar were talking. Defendant made several threats against Edgar until Alarcon told him to be quiet.

"Alarcon's interview with Edgar took 15 to 20 minutes during which defendant remained in Alarcon's patrol vehicle. Alarcon was on the scene for 25 to 35 minutes before he drove defendant to the central receiving facility in Bakersfield. Alarcon explained to defendant why he was under arrest while enroute to the jail. Alarcon asked defendant if he tried to enter Edgar's residence and defendant confirmed that he did." (*Murray*, *supra*, F084628.)

## DISCUSSION

As discussed above, defense counsel filed a *Wende* brief identifying no basis for relief and asking that we review the record to determine if there were any arguable issues

5.

on appeal. By letter dated December 24, 2024, we invited defendant to submit a letter with any grounds for appeal he wished us to consider. Defendant did not respond to our invitation.

Pursuant to *Wende* and *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted a thorough review of the record. Consistent with *Kelly*, we have provided a brief description of the facts and the procedural history of the case, the crimes for which defendant was convicted, and the punishment imposed. (*Kelly*, at p. 110.) We conclude there are no arguable issues on appeal and affirm the judgment. (*People v. Wende*, *supra*, 25 Cal.3d at pp. 441–443.)

## DISPOSITION

The judgment is affirmed.